Charles D. RAGLAND, Commissioner of Revenues,
Department of Finance and Administration, State of
Arkansas *v.* MILLER TRANE SERVICE AGENCY, INC.

81-120                                               623 S.W. 2d 520

Supreme Court of Arkansas
Opinion delivered November 9, 1981

*James R. Eads, Jr., Joseph V. Svoboda, H. Thomas Clark, Jr., Timothy J. Leathers, Kelly S. Jennings, Wayne Zakrzewski,* by: *Cassandra Wilkins-Slater,* for appellant.

*Laser, Sharp, Haley, Young & Huckabay,* by: *Joe A. Polk,* for appellee.

FRANK HOLT, Justice. After an administrative hearing in March, 1979, the appellant, through its Revenue Department Hearing Board, determined that appellee owed a sales tax deficiency of $8,253.71, which included interest and a 10% penalty, for appellee's failure to remit the 3% gross receipts tax on the sale of commercial contracts from September 1, 1975, through August 31, 1978. The appellee paid the assessment under protest and filed this action to contest the correctness of appellant's action. The chancellor found that 75% of the taxes assessed by appellant were improper, including the interest and penalty. Appellant was ordered to repay these funds. Hence this appeal.

Appellee is engaged in the business of inspecting, servicing, and repairing commercial heating and cooling devices. There are two types of contracts. The first is an

"inspection only" contract, which all parties agree is exempt from the gross receipts tax. The second, or the one in dispute, is a "Full Coverage Commercial Service Contract" whereby appellee agrees with a customer to inspect (a minimum of 3 times a year), maintain, and repair commercial heating and cooling units. The contract provides for an annual or monthly prepayment. It is agreed, *inter alia,* that the full maintenance agreement is designed to assure the maximum service for the efficient and economical operation of the equipment. Contract jobs under this service agreement take priority over other jobs and are guaranteed prompt action upon request. It is stipulated that the issue presented is whether the total consideration paid pursuant to this contract is subject to the 3% sales tax, Ark. Stat. Ann. § 84-1903 (c) (3) (Repl. 1980), or only that portion which relates to specific repairs. Further, if appellee is liable for any unpaid sales tax, then whether appellee's failure to pay it is subject to a penalty as provided by the pertinent provisions of the act.

Appellant first contends that the trial court erred in finding appellee's full coverage commercial contract can be broken down into component parts for the purposes of collecting the gross receipts tax. § 84-1903 (c) (3). The component parts of this package of services are regular inspections, maintenance and necessary repairs. The latter is covered by insurance which appellee purchases after the sale of the contract. Therefore, when appellee makes repairs, it then bills the insurance carrier and adds a 3% sales tax. The trial court found that 75% of the taxes assessed by appellant were "allocable to non-taxable inspection service and insurance." The chancellor, however, found that the maintenance services (25%) were taxable.

Section 84-1903 (c) (3) provides for a 3% tax on gross proceeds or receipts derived from the service of "alteration, addition, cleaning, refurbishing, replacement and repair of . . . machinery of all kinds . . . " Gross proceeds or gross receipts is defined in Ark. Stat. Ann. § 84-1902 (d) (Repl. 1980), which states, in pertinent part:

The term 'gross receipts' or 'gross proceeds' means the

total amount of consideration for the sale of tangible personal property and such services as are herein specifically provided for, whether the consideration is for money or otherwise, without any deduction therefrom on account of the properties sold, labor service performed, interest paid, losses or any expenses whatsoever.

In *Belvedere Sand and Gravel* v. *Heath,* 259 Ark. 767, 536 S.W. 2d 312 (1976), we held that where non-taxable services (hauling charges) were included as part of the total consideration received from the sale of a taxable item (sand and gravel), such charges constituted part of the gross proceeds under § 84-1902 (d) and were subject to the tax. In *Larey, Comm'r of Rev.* v. *Dungan-Allen,* 244 Ark. 908, 428 S.W. 2d 71 (1968), the appellee argued that the incidence of the gross receipts tax should be *divided* between non-taxable revenue derived from professional services consultation and taxable revenue derived from taking the photographs. We said that while the consultation service alone would not be taxable under § 84-1903 (d), when coupled, however, with a taxable service where the value of the end product is enhanced, the total consideration received for the consultation and sale of the photograph is taxable. In *Ferguson* v. *Cook,* 215 Ark. 373, 220 S.W. 2d 808 (1949), we said, in reference to the definition of gross proceeds or gross receipts, "where one sells an article in the preparation of which for sale he has expended labor, which adds to its value and was necessary to make it salable, he must pay the sales tax on the price received, without deduction for the value of the labor performed."

Here, the total consideration paid by appellee's customers is for the package of services, i.e., inspection, maintenance and repairs, which it agreed to perform during the period covered by the contract. Maintenance and repairs of the machinery are taxable services. Inspection of the equipment is a prerequisite to the routine maintenance and repair and is an integral part of the contract. This inspection involves labor performed pursuant to the sale of taxable services; therefore, the cost of such an inspection cannot be deducted from the total amount of consideration paid for the

full service contract. Appellee's insurance coverage for reimbursement to it for repairs it made, plus 3% sales tax, was for its benefit. In summary, appellant's claim is properly based upon the total consideration received by appellee for the sale of its package contract.

Appellant next contends that the trial court erred in finding that it should tax only those services performed by appellee which are specifically listed in § 84-1903 (c) (3). It appears undisputed that "check" and "examine," or inspection services, provided by appellee do not fit within the appellee's other services which are within the ambit of the sales tax statute. However, the unlisted services enhance the value of the full coverage contract and increase the marketability of the taxable services provided by appellee. Therefore, under the rationale of *Belvedere Sand and Gravel* v. *Heath, supra; Larey* v. *Dungan-Allen, supra;* and *Ferguson* v. *Cook, supra,* the cost of these unlisted services cannot be deducted from the total consideration received.

Appellant next argues that the trial court erred in finding that the appellee had paid the gross receipts tax due on repairs pursuant to the full coverage contract. Mr. Miller, owner of appellee, testified that the 3% tax was added to the cost of repairs when it billed the insurance carrier. However, neither his testimony nor that of Mr. Wisely, who supervised the audit by the appellant, established that the state has ever received the 3% tax from appellee or its insurance carrier. The appellee, the taxpayer, is required to collect and remit the 3% sales tax to the state. Ark. Stat. Ann. § 84-1908 (Repl. 1980).

Appellant contends that the trial court erred in disallowing its assessment of the 10% penalty which it imposed on appellee pursuant to § 84-1910 (Repl. 1960), which provides:

> If any part of the deficiency is due to negligent or intentional disregard of this act or of the authorized rules and regulations of the Commissioner, but without intent to defraud, there shall be added as penalty 10 percent of the total amount of such deficiency . . . .

Here, the trial court found the nonpayment of taxes to be reasonable and, therefore, the penalty was improper. In *Great Lakes Chemical Corporation* v. *Wooten,* 266 Ark. 511, 587 S.W. 2d 220 (1979), we said:

> As we read the statute, if the tax [compensating or use tax] is not paid when due, there is either a 10% penalty for negligent non-payment without intent to evade the tax or a 50% penalty for fraudulent non-payment with intent to evade the tax. § 84-3113 (Repl. 1960). One penalty or the other is to be assessed; so Great Lakes cannot complain about the appellee's [Department of Finance and Administration] having imposed the 10% penalty only.

In *R. L. Qualls* v. *Georgia-Pacific Corp.,* 269 Ark. 426, 602 S.W. 2d 646 (1980), we stated: "A penalty assessment may very well be essential to maintain the integrity of the taxing system." Here, the proof indicates that the appellee has failed to pay any of the disputed 3% tax over a three year period preceding the audit. Admittedly, appellee sought or received reimbursement for a 3% sales tax from its insurance carrier based on the repairs it had made under its contracts. As we have indicated, there is no evidence adduced by appellee that this nor any portion of the sales tax was remitted to the state. In the circumstances, we cannot say the 10% penalty is inappropriate.

We reverse the chancellor and reinstate the finding of appellant's Revenue Department Hearing Board.

Reversed.